*In re* McNAMARA'S ESTATE.

McNAMARA *v.* MICHIGAN TRUST CO.

1. Appeal and Error—Evidence—Exclusion—Grounds.
   On appeal from a judgment against an estate for an insufficient amount for services rendered decedent during her lifetime, the exclusion of testimony of physicians, on the ground that the answers were privileged, will not be regarded as reversible error, where an examination of the record discloses that if a larger verdict had been given by the jury it would have been the duty of the trial court, on proper motion, to set it aside as excessive.

2. Evidence—Opinion Evidence—Competency.
   In an action on a claim against an estate for services rendered, the opinions of witnesses, who had some knowledge of the services rendered and the value thereof, was properly received.

3. Executors and Administrators—Claims—Services—Amount of Recovery—Instructions.
   In such action, it appeared that the claim was based on an agreement that decedent should pay claimant out of her estate after her death; that some three months prior thereto decedent made a deed to claimant of property valued at $6,000 and placed it in the hands of another to be delivered on her death; that the consideration expressed in said deed was "one dollar and other good and valuable considerations" the receipt whereof was acknowledged; that claimant paid no money for the deed; and that decedent stated after the execution of the deed that she had paid claimant nothing for her services. *Held*, there being no other testimony opposed to the inference that consideration for the deed consisted of services rendered, that, either the witness misunderstood decedent in regard to such statement, or that decedent was ignorant of the effect of the delivery of the deed, and the court properly directed the jury to deduct from their verdict the value of the property deeded.

4. Same—Claims—Services—Amount of Recovery—Inadequate Compensation—New Trial.
   It appearing that, for services to decedent for a period of 18

years, claimant, in addition to a home, including her board and clothing, recovered a verdict of $17,242, it was not error to deny a motion for a new trial on the grounds that such verdict was inadequate and against the weight of the evidence.

Error to Kent; Perkins, J. Submitted January 12, 1909. (Docket No. 75.) Decided March 3, 1909.

Mary McNamara presented a claim against the estate of Mary McNamara, deceased, for services rendered. The claim was allowed in part by the commissioners, and claimant appealed to the circuit court. There was judgment for claimant for an insufficient amount, and she brings error. Affirmed.

*Black, Reasoner & Hayden*, for appellant.

*Thomas P. Bradfield* (*Kleinhans & Knappen*, of counsel), for appellee.

MOORE, J. This case has been here before, and is reported in 148 Mich. 346. A reference to the opinion then handed down will be helpful in understanding the issues involved here. The claimant was distantly related to Mary McNamara, deceased, against whose estate she makes a large claim for services rendered from June, 1885, to February, 1904, under an alleged promise of compensation, which the claim presented states in the following terms:

" If claimant would remain and care for and look after her [deceased] and personally care for her, attend the household duties and other business matters of the deceased, she, the said deceased, would pay the claimant well and liberally for all her services out of her estate at the time of her death, and that such allowance payment would be sufficient to keep claimant well during the balance of her life."

When a young woman, Miss McNamara came from Ireland to relatives in Wisconsin. After being with them

about a year, she came to live with Mrs. McNamara at Grand Rapids in June, 1885. She continued to live with Mrs. McNamara, who was a woman about 45 years old at the time of claimant's arrival, until Mrs. McNamara's death in February, 1904. Before claimant came to America, she taught school in Ireland, and was paid for her teaching $30 a year and her board. While in Wisconsin she passed an examination for school teachers in one of the lower grades, and was told she could get a school later, when there was a vacancy, at $35 or $40 a month for eight or nine months of the year, she to board and clothe herself. The husband of Mary McNamara, the deceased, died in 1882. From the time of her husband's death Mrs. McNamara lived a quiet life. She dressed plainly, lived economically, and gave largely to charitable institutions. Mrs. McNamara and the claimant lived quietly, paid but few calls, and received comparatively few visitors. During the 18 years claimant was with her, deceased left Grand Rapids three times. She went to a sanitarium in Milwaukee in the summer of 1902, and that and the following winters she went to Phœnix, Ariz., where she died in February, 1904. Her health was poor the last few years of her life, but she was confined to her room or bed but little of the time until the last winter of her life. She was able to be up and about, and to attend church daily up to within a few months of her death. The deceased and claimant lived happily together. In 1891 deceased made a will leaving $5,000 to claimant in consideration of claimant's services to her and out of deceased's regard for claimant. This will was offered in evidence, but it was admitted it was disallowed when offered for probate. Before Mrs. McNamara left Grand Rapids for Arizona the last time, and less than three months before her death, she deeded to claimant her Sheldon street property, where they lived, and also a small house. The deed was signed and acknowledged in the presence of the claimant, and witnessed by Harriet L. Martin and Mary Dias. On the evening the deed was signed, and in claimant's presence,

Mrs. McNamara stated the houses and lot covered by the deed and the $5,000 provided for claimant by will was in compensation for claimant's services. The deed was delivered to Henry J. Richter with written instructions to deliver it to claimant after Mrs. McNamara's death. This deed was delivered to claimant soon after Mrs. McNamara's death, and claimant has been in possession of the property ever since. In 1906 she sold the small house for $1,000. It was agreed by counsel that these houses were worth $6,000 at the time claimant took possession of them. The claimant did the housework, excepting the heavier household tasks, such as washing and heavy sweeping, and she went with Mrs. McNamara as a companion when she went out. The claimant nursed and cared for Mrs. McNamara when her condition required it. During the last years of her life, deceased required a good deal of attention. Claimant also did errands and commissions of a business nature, and on several occasions kept track of the work being done by contractors for deceased. She accompanied deceased when she went to consult with her attorneys, and wrote out receipts for the rent of two small stores owned by her, and occasionally looked after the repairs thereon. The estate left by Mrs. McNamara, in addition to the Sheldon street property deeded to claimant, was vacant property, and a brick building containing two stores and some living rooms above, with a gross rental value of about $90 a month, located in Grand Rapids. The assessed valuation of all the property is $37,500. The appraised valuation is $55,050.

There is nothing to indicate that the value of this property was increased by any work claimant did in relation to it. The claimant during all this time had all the expenses of her living defrayed by Mrs. McNamara. Upon the second trial a special question was submitted to the jury as follows:

"Did the claimant and the deceased at the time of the

commencement of the service of the claimant to the deceased, or during the continuance of that service, enter into an agreement that if the claimant should remain with the deceased and care for her and look after her, and personally care for her, attend to the household duties and the other business matters of the said deceased, she, the said deceased, would pay the claimant well and liberally for all the services out of her estate at the time of her death, and that such allowance and payment would be sufficient to keep the claimant well during the balance of her life?"

The jury answered the special question "No." The jury fixed the value of the services of claimant at the sum of $17,242, and by direction of the court deducted therefrom the value of the real estate which had been deeded to Miss McNamara, which it was agreed was of the value of $6,000.

The counsel for appellant claims error as follows:

(1) Because the court erroneously refused to allow certain questions and answers contained in certain depositions to be read in evidence.

(2) Because the court allowed certain witnesses of the contestant to state the value of claimant's services without showing their qualifications so to do, and without including in their answers the several different kinds of work the claimant rendered the deceased.

(3) Because the court ruled as a matter of law, and so directed the jury, that the value of the property deeded to claimant must be deducted from whatever was due her for services and refused to submit to the jury the question as to whether the property deeded to claimant was not a gift to her rather than a payment.

(4) Because the court overruled the claimant's motion for a new trial because the verdict was inadequate and against the weight of evidence.

We will consider these questions in the order in which they are presented by counsel.

1. The questions and answers excluded were found in the depositions of Dr. Stroud, who treated the deceased while she was in Arizona, and Dr. Stack, who treated her while she was in the sanitarium in Wisconsin.

Much of the testimony of these witnesses was received in evidence. As to portions of it, objection was made that it was incompetent because the witnesses were physicians, and the answers given were privileged. The trial judge sustained the objections. Counsel for claimant insist this is error, while counsel for the estate are equally insistent that it is not error. Each of them cite many authorities in support of their respective claims. In our view of the case, it is not necessary to decide this question. The record discloses that Dr. Stroud had no knowledge of the deceased or of the claimant except while they were in Arizona. Dr. Stack's knowledge of them was confined to when they were in Wisconsin. If the testimony of both these witnesses had been received and acted upon by the jury, it, when taken in connection with the other testimony disclosed by the record, would not have justified the jury in returning any larger verdict than it did return, and, if the verdict had been larger, it would have been the duty of the trial judge to set it aside as excessive, upon proper motion being made.

2. Did the court err in allowing certain witnesses for contestant to express an opinion as to the value of claimant's services? An examination of the record shows that each of them had some knowledge of the service rendered and of the value thereof. The testimony was properly received.

3. Did the court err in directing the jury to deduct the value of the property deeded to the claimant from what they found to be due her for services? In disposing of the case when it was here before, Justice MONTGOMERY referred to the deed as follows:

"The contract alleged and proved was a contract to compensate claimant for her services out of the estate of decedent. By the conveyance in question to become operative at the death of decedent a portion of her estate was set apart to claimant. It was a transfer in kind, and prima facie payment pro tanto."

We have already referred to the testimony as to what

was said and done when this deed was made. The consideration recited in the deed was:

"That the said party of the first part for and in consideration of the sum of one dollar and other good and valuable considerations to her in hand paid by the said party of the second part, the receipt whereof is hereby confessed and acknowledged, does by these presents grant, bargain, sell," etc.

It is agreed that claimant paid no money for this deed. After the death of Mrs. McNamara the claimant wrote her cousin from Phœnix on February 21st, in which letter the following occurred:

"The body is well embalmed. I saw it yesterday. She looked handsome even in death. Before she left home in November, she deeded to me the Sheldon street property. There is also a sum mentioned in the will. The bishop is the executor, and most of the property, as I suppose you expected, goes to charitable institutions. We had return tickets, so the body was taken for one. She used to say if she died out West to bury her there to save expense. I always told her right out that I would never bury her like a pauper out here. She would tell the people that 'Mary would not leave her to be buried here.' She did not realize that death was at hand; it came so easy, though she suffered much for five days, the length of her last illness. I miss her terribly, she was so pleasant and good company. My sister lives in Chicago and will accompany me from there to G. Rapids for the funeral."

The only testimony opposed to the idea that the consideration for the deed consisted of services rendered is a statement of Dr. Stroud, to the effect that the deceased told him she had never paid claimant anything. It must be remembered that at this time the will was in existence and the deed was in the possession of Bishop Richter. It is evident Dr. Stroud either misunderstood Mrs. McNamara or else Mrs. McNamara misunderstood the effect of making the deed and handing it to Bishop Richter to be delivered after her death.

4. Did the court err in overruling the motion for a new trial because the verdict was inadequate and against the

weight of evidence? In disposing of the case when it was here before, Justice MONTGOMERY used the following language:

"We deem it proper to say, however, that the court should not hesitate to intervene when it is manifest that a jury under the guise of allowing a claim undertakes to distribute an estate in accordance with their ideas of justice."

It is evident this language was not brought to the notice of the jury, or if it was they gave it no attention. The case made by the record shows that a young woman was taken into a comfortable home of a distant relative, where she was treated as a member of the family, and, in return for her services, was furnished a home, including her board and clothing, and for her services at the end of 18 years, in addition to the home which had been furnished her, she finds herself in possession of a fortune of $17,242. If anyone has just occasion to complain of the result of this litigation, it is not the claimant.

Judgment is affirmed.

BLAIR, C. J., and GRANT, MONTGOMERY, and OSTRANDER, JJ., concurred.